IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HONOLULU DISPOSAL SERVICE, INC. and ALII REFUSE CORP., | ) ) | CIVIL NO.  05-00012 JMS/KSC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | ORDER GRANTING DEFENDANT |
| vs. | ) | AMERICAN BENEFIT PLAN |
| | ) | ADMINISTRATORS, INC.'S |
| AMERICAN BENEFIT PLAN | ) | MOTION FOR SUMMARY |
| ADMINISTRATORS, INC.; JOHN | ) | JUDGMENT |
| DOES 1-10; JANE DOES 1-10; and | ) | |
| DOE PARTNERSHIPS, | ) | |
| CORPORATIONS, or ENTITIES 1- | ) | |
| 20, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT AMERICAN BENEFIT PLAN
ADMINISTRATORS, INC.'S MOTION FOR SUMMARY JUDGMENT

I.  INTRODUCTION

Plaintiff Honolulu Disposal, Inc. ("HDS") seeks to recover over $6.75

million from Defendant American Benefit Plan Administrators, Inc. ("ABPA").

HDS spent this $6.75 million defending and settling a case brought by its former

employees who had not received pension benefits promised them under a series of

written Collective Bargaining Agreements ("CBAs").  HDS claims that it did not

know that these written CBAs required HDS to make these pension payments,

because HDS did not know what was in the written CBAs.  Instead, HDS believed

its oral side agreement with The Laborers International Union of North America,

Local 368, AFL-CIO ("the Union") -- which did not require HDS to make pension

payments on behalf of the former employees -- set forth the terms of HDS's

pension payment requirements.  But while HDS claims that it did not know what

was in its own CBAs, HDS also contends that ABPA -- an outside auditor hired by

the pension plan Trustees -- should have known what was in the CBAs, should

have known that the oral modifications were invalid, and should have told HDS to

make the required pension payments.  HDS further argues that ABPA's statements

to the pension plan Trustees (that HDS had made all the required pension

payments) were negligent misrepresentations and that HDS was justified in relying

on these misrepresentations.

      The court disagrees, and grants ABPA's motion for summary

judgment.

## II.  BACKGROUND

      HDS collects and disposes of garbage, and as such, employs several

individuals as drivers.  Between 1979 and 1996, HDS signed a series of CBAs

with the Union.  The plain language of the CBAs stated that *all* the drivers were

"covered employees" under the CBAs and, as "covered employees," were entitled

to pension benefits.  Pursuant to an oral agreement between HDS and the Union, however, only two or three drivers were deemed to be "covered employees" under the CBAs.  HDS, in turn, only made contributions to the pension plans for those two or three employees, rather than all the drivers.  *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1153-55 (9th Cir. 2000).

The other drivers eventually realized that they were covered by the plain language of the CBAs, but that they were not getting pension benefits or other benefits given to "covered employees."  In 1997, four drivers sued HDS, the pension plan Trustees ("the Trustees"), and others in the United States District Court for the District of Hawaii.  HDS defended the case by arguing that the oral modifications to the CBAs were valid, such that the plaintiffs (the other drivers not deemed to be "covered employees") were not covered by the terms of the CBAs and thus not entitled to pension benefits.  *Id.* at 1154-55 ("HDS, the Union, and the Trust Funds moved for summary judgment, contending that HDS and the Union had an oral agreement limiting the bargaining unit--and thus the coverage of the CBAs--to only a couple of employees not including the Drivers.").

The district court granted summary judgment in favor of HDS and the other defendants in the *Pace* suit, concluding that the oral modifications to the CBAs were valid and that the *Pace* plaintiffs were therefore not "covered

employees." The Ninth Circuit reversed. The court held that the oral modifications were irrelevant, inasmuch as the parol evidence rule barred consideration of the oral agreements where the written CBAs were facially clear. *Id.* at 1160. HDS settled with the *Pace* plaintiffs for $5.75 million and alleges that it spent over one million dollars in attorneys' fees litigating the matter.

In the instant case, HDS seeks to pass the blame (and the cost) for failure to comply with its own CBAs on to someone else, and it now turns to ABPA.

ABPA performed a series of payroll audits of HDS in the 1980s and 1990s. *See*, *e.g.*, Plaintiff's Concise Statement of Facts ("Plaintiff's Concise") Exs. 9-15. ABPA was hired by the Trustees to ensure that HDS was making its required pension contributions. Plaintiff's Concise at 1, Defendant's Concise Statement of Facts ("Defendant's Concise") at 3. In other words, ABPA was the Trustees' auditor, not HDS's auditor. Even though HDS did not hire ABPA, HDS believes it should be allowed to recover from ABPA because ABPA was negligent in conducting the audits. Again, HDS contends that ABPA should have known or should have discovered that HDS was required to make pension contributions on behalf of all its drivers; HDS also argues that ABPA negligently misrepresented that there were no discrepancies between HDS's reports to the Trustees and HDS's

payroll (*i.e.*, HDS contends that ABPA negligently misrepresented that HDS was making all the contributions it was supposed to make).  Essentially, HDS's argument is that it relied on ABPA to ensure that it (HDS) was making the required payments to the pension plans, and that ABPA's failure to uncover the discrepancies was the proximate cause of HDS's liability in the *Pace* suit.  Thus, according to HDS, ABPA is responsible for HDS's expenditure of $6.75 million.

HDS and Alii Refuse Corp. ("Alii")[1] filed the instant Complaint, setting forth claims for negligence and negligent misrepresentation, against ABPA in the Hawaii First Circuit Court on November 24, 2004.  ABPA removed the case to federal district court pursuant to 28 U.S.C. § 1441(b) (diversity of citizenship) on January 7, 2005.  ABPA moved for summary judgment on December 7, 2005, and on March 6, 2006, the court heard arguments on the motion.

---

[1] There is some confusion as to whether HDS and Alii are separate entities.  In *Pace*, 227 F.3d at 1153 n.1, the Ninth Circuit stated, "HDS and Alii Refuse Corporation concede that they are a single employer[.]"  The court assumes that HDS and Alii are, in fact, the same entity, and refers to them throughout this opinion as "HDS."  As discussed more fully *infra*, the court concludes that ABPA is entitled to summary judgment as to HDS's claims; given the court's assumption that Alii and HDS are a single employer, the court's grant of summary judgment extends to Alii as well.

If the court's assumption is incorrect, and Alii is in fact a separate corporation, then ABPA would still be entitled to summary judgment as to Alii.  There is no evidence that ABPA ever audited Alii or had any other contact with Alii, and Alii cannot survive summary judgment without providing some evidence to the contrary.

HDS first argues that ABPA is liable for negligence.  As discussed *infra*, however, ABPA is entitled to summary judgment on this claim because ABPA owed no duty to HDS.

HDS next argues that ABPA is liable for negligent misrepresentation because it acted reasonably in relying on ABPA's assertions that HDS had made the required trust fund payments.  As discussed *infra*, if HDS did, in fact, rely on ABPA's assertions, this reliance was not justified.  For HDS to say that it acted reasonably in relying on ABPA to uncover a discrepancy between its oral and written contracts -- when HDS could have discovered the discrepancy at any time had it simply read its own CBAs -- is simply not plausible.  Furthermore, viewing the facts in the light most favorable to HDS, HDS's negligence was greater than that of ABPA.  Summary judgment is appropriate in this case because no reasonable finder of fact could find for HDS.  Therefore, based on the following, the court GRANTS ABPA's motion.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## IV. <u>ANALYSIS</u>

HDS brings two claims for relief against ABPA: negligence and negligent misrepresentation. The court concludes that ABPA is entitled to summary judgment as to both claims.

A. <u>Negligence</u>

Where there is no duty, there can be no recovery in tort. *See Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Haw. 398, 419, 992 P.2d 93, 114 (2000) (listing the elements of a negligence claim, including "[a] duty or obligation, recognized by the law, requiring the defendant to conform to a certain standard of conduct, for the protection of others against unreasonable risks" (citations and

block quote formatting omitted)).  ABPA argues that it is entitled to summary judgment as to HDS's negligence claim because ABPA owed no duty to HDS. The court agrees.

The court has jurisdiction over this matter based on diversity of citizenship; as such, the court applies Hawaii state law.  *Erie R.R. Co. v. Tompkins*, 304 U .S. 64, 78 (1938).  The Hawaii Supreme Court has stated the following with respect to a third-party negligence suit against an accountant:

> Similar to the reasons supporting a duty under legal malpractice, justification for holding accountants liable includes:  (1) the extent to which the transaction was intended to affect the plaintiff;  (2) the foreseeability of harm to the plaintiff;  (3) the degree of certainty that the plaintiff suffered injury;  (4) the closeness of the connection between the defendant's conduct and the injury;  (5) the policy of preventing future harm;  and (6) whether imposing liability imposed an undue burden upon the profession.

*Blair v. Ing*, 95 Haw. 247, 270, 21 P.3d 452, 475 (2001) (citing *Lucas v. Hamm*, 364 P.2d 685, 687-88 (Cal. 1961)).  Applying this test to the facts in *Blair*, the Hawaii Supreme Court concluded that "[b]ecause the Appellants were incidental, not intended, beneficiaries, the Appellants do not satisfy the first factor under *Lucas*.  Therefore, as a matter of law, [the accountant] was entitled to summary judgment."  *Blair*, 95 Haw. at 270, 21 P.3d at 475.  In other words, the first *Lucas*

factor appears to be dispositive in determining whether an individual can maintain a negligence action against an accountant.[2]

---

[2] The decision of the Hawaii Intermediate Court of Appeals (ICA) in *Kohala Agriculture v. Deloitte & Touche*, 86 Haw. 301, 949 P.2d 141 (App. 1997), provides useful background on this point. *Kohala Agriculture*, discussed in more detail in Section B below, examined a non-client's negligent misrepresentation claim against an accounting firm. The ICA looked to the California Supreme Court for guidance on this issue:

> Since this issue has not been decided in Hawaiʻi, we look to the approaches examined and adopted by other jurisdictions in addressing an accountant's duty and hence potential liability to third parties. There are three doctrines which have been applied: (1) privity; (2) foreseeability; and (3) section 552 [of the Restatement (Second) of Torts (1977)]. We find the California Supreme Court's thorough decision in *Bily v. Arthur Young & Co.*, 3 Cal.4th 370, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992) to be particularly instructive in examining all three approaches.

*Id.* at 315, 949 P.2d at 155 (footnote omitted). In *Bily*, the California Supreme Court concluded that:

> [A]n auditor owes no general duty of care regarding the conduct of an audit to persons other than the client. An auditor may, however, be held liable for negligent misrepresentations in an audit report to those persons who act in reliance upon those misrepresentations in a transaction which the auditor intended to influence, in accordance with the rule of section 552 of the Restatement Second of Torts[.]

834 P.2d at 747 (footnote omitted). In other words, in *Bily*, the California Supreme Court held that a third party may not maintain a negligence action against an accountant. In *Kohala Agriculture*, the ICA relied heavily on *Bily* in defining the scope of an accountant's duty.

The fact that the Hawaii Supreme Court in *Blair* found the first *Lucas/Blair* factor -- "the extent to which the transaction was intended to affect the plaintiff" -- to be dispositive is therefore unsurprising: the Hawaii Supreme Court and ICA relied heavily on the California Supreme Court, and the California Supreme Court concluded that a third party cannot maintain a pure negligence action against an accountant. The first *Lucas/Blair* factor -- the extent to which the transaction was intended to affect the plaintiff -- most succinctly captures the policy consideration weighing against imposing a duty on an accountant in a negligence action brought by a third party.

HDS was, at most, an incidental beneficiary of ABPA's audit.  The Trustees hired ABPA to ensure that the Union Trust Funds (the pension plans) were receiving money owed by HDS.  The Union Trust Funds and the Trustees, not HDS, were the intended beneficiaries.  Consequently, HDS cannot maintain a negligence claim against ABPA, and the court GRANTS summary judgment in favor of ABPA on this claim.[3]

B.     Negligent misrepresentation

ABPA is also entitled to summary judgment as to HDS's negligent misrepresentation claim.  The court first examines the elements of a negligent misrepresentation claim as set forth by the Hawaii courts.  The court then analyzes ABPA's arguments as to why these elements have not and cannot be met in this case.

---

[3] The facts in *Blair* are instructive to this court's ruling.  In *Blair*, Lloyd and Joan Hughes created a revocable living trust agreement for the disposition of their assets upon death, with their children (Leslie Blair and Laurie Bishop) named as the sole residual beneficiaries.  After Lloyd Hughes passed away, Joan Hughes retained Thomas Thayer, an accountant, to prepare federal and state estate tax returns.  Joan Hughes passed away a short time later, leaving the entire trust to Blair and Bishop.  Blair and Bishop then brought an accountant negligence claim against Thayer, alleging that the estate tax returns contained costly errors diminishing their inheritance.  *Blair*, 95 Haw. at 250-52, 21 P.3d at 455-57.  Under these facts, the Hawaii Supreme Court had no difficulty concluding that Blair and Bishop were incidental, rather than intended, beneficiaries of the relationship between Joan Hughes and Thayer.  *Id.* at 270, 21 P.3d at 475.  The Hawaii Supreme Court easily concluded that the relationship between Thayer and Blair and Bishop was incidental, and this court likewise has no trouble concluding that HDS's relationship to ABPA was solely incidental.

### 1.      Elements of a negligent misrepresentation claim

The Hawaii Supreme Court has set forth the elements of a negligent

misrepresentation claim as follows:

> [A] plaintiff claiming negligent misrepresentation must show
> that:  "(1) false information [is] supplied as a result of the
> failure to exercise reasonable care or competence in
> communicating the information;  (2) the person for whose
> benefit the information is supplied suffered the loss;  and (3)
> the recipient relies upon the misrepresentation."  *Blair v. Ing*,
> 95 Hawai'i 247, 269, 21 P.3d 452, 474 (2001) (citing *Kohala
> Agriculture v. Deloitte & Touche*, 86 Hawai'i 301, 323, 949
> P.2d 141, 163 (App.1997), and Restatement (Second) of Torts
> § 552 (1977)).  Plaintiffs may recover the pecuniary losses
> caused by their justifiable reliance on a negligent
> misrepresentation.

*Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 321, 47 P.3d 1222, 1234 (2002)

(second alteration in original).  This test is taken directly from the Restatement

(Second) of Torts § 552 (1977),[4] and the Hawaii courts have a long history of

---

[4] The Restatement (Second) of Torts § 552, entitled "Information Negligently Supplied
For The Guidance Of Others," provides:

> (1)      One who, in the course of his business, profession or employment,
> or in any other transaction in which he has a pecuniary interest, supplies
> false information for the guidance of others in their business transactions,
> is subject to liability for pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise reasonable care or
> competence in obtaining or communicating the information.

> (2)      Except as stated in Subsection (3), the liability stated in
> Subsection (1) is limited to loss suffered

(continued...)

relying on § 552 for negligent misrepresentation claims.  *See*, *e.g.*, *State by Bronster v. U.S. Steel Corp.*, 82 Haw. 32, 41, 919 P.2d 294, 303 (1996) ("The duty imposed by section 552 is therefore to exercise reasonable care or competence in obtaining or communicating information for the guidance of others in their business transactions."); *Chun v. Park*, 51 Haw. 462, 468, 462 P.2d 905, 909 (1969) (citing section 552 and concluding that a title company that prepared a title search on behalf of the seller owed a duty to the buyer of that property, even though no contract existed between the buyer and the title company).

The Hawaii courts have specifically concluded that § 552 applies to situations like the instant case, in which a negligent misrepresentation claim is brought against an accountant by a third party (*i.e.*, by someone other than the accountant's client).  *Kohala Agric. v. Deloitte & Touche*, 86 Haw. 301, 315, 949 P.2d 141, 155 (App. 1997) ("[T]he scope of an accountant's duty to third parties is

---

[4](...continued)
       (a)    by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
       (b)    through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3)    The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

governed by section 552(2)."). Consequently, this court will also look to § 552 in determining whether HDS is entitled to proceed with its claim of negligent misrepresentation. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

### 2. Summary judgment is appropriate as to HDS's negligent misrepresentation claim

ABPA presents two arguments in favor of summary judgment as to HDS's negligent misrepresentation claim. First, ABPA argues that HDS's contributory negligence bars recovery pursuant to the Restatement (Second) of Torts § 552A.[5] Second, ABPA contends that HDS's alleged reliance on ABPA's false statements was not justifiable, such that HDS cannot meet the required elements of a claim for negligent misrepresentation (as set forth in § 552). As to ABPA's first argument, the court does not decide whether contributory negligence principles apply to the instant case. Nevertheless, the court ultimately concludes that even if contributory negligence principles did not apply, comparative negligence principles would apply and would bar HDS from recovering against ABPA. As to ABPA's second argument, the court agrees with ABPA that HDS's

---

[5] Section 552A, entitled "Contributory Negligence," provides that "[t]he recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying."

reliance (if any) was not justified.  The court addresses each of ABPA's arguments

in turn.

      a.    <u>Contributory negligence</u>

      Whether a Hawaii court would apply contributory negligence

principles, as set forth in the Restatement (Second) of Torts § 552A, is unclear.  If

a Hawaii court were presented with the question of whether to adopt § 552A, there

seem to be three options available:  (1) apply § 552A and conclude that a

plaintiff's contributory negligence bars all recovery; (2) apply § 552A where the

plaintiff alleges solely pecuniary harm, but apply Hawaii's modified comparative

negligence statute, Hawaii Revised Statutes ("HRS") § 663-31,[6] in cases involving

bodily injury or property damage; or (3) apply HRS § 663-31 in all negligent

misrepresentation actions.  Because HDS seeks to recover solely pecuniary harm,

this court is left with the question of whether to apply § 552A (contributory

negligence) or HRS § 663-31 (comparative negligence).

---

     [6] HRS § 663-31, entitled "Contributory negligence no bar; comparative negligence; findings of fact and special verdicts," provides in relevant part:

     (a) Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

14

The court is reluctant to rule on unsettled questions of Hawaii law where there is no need to do so.  In the instant case, the court concludes that ABPA is entitled to summary judgment regardless of whether a Hawaii court were to adopt a contributory negligence or comparative negligence scheme.

Applying § 552A in the instant case would clearly eviscerate HDS's claims:  there is no doubt that HDS was *somewhat* negligent in not realizing that a discrepancy existed between the written CBAs and the oral modification to those CBAs.  HDS, in the present lawsuit, argues that ABPA should have discovered this discrepancy.  HDS further argues that the prohibition on oral modifications of trust fund contributions should have been obvious to ABPA given the Ninth Circuit's statement in *Waggoner v. Dallaire*, 649 F.2d 1362, 1366 (9th Cir. 1981), that an employer and a union could not orally modify the terms of a collective bargaining agreement with respect to the employer's trust fund obligations (pursuant to section 302 of the Labor Management Relations Act, 29 U.S.C. § 186).  HDS argues that *Waggoner* "is the foundation of a string of Ninth Circuit cases which all reached the same result" and that ABPA should have known of the law in *Waggoner* because "that law is the bedrock of what the auditor was doing." Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 21.  If the law was so obviously clear, as HDS argues, then HDS itself was negligent in not

15

conforming its contracts to this legal framework.[7]  In other words, HDS was

negligent in failing to understand the terms of its own CBAs and realize that its

oral modifications were improper.  In sum, if the court were to apply § 552A, the

court would grant summary judgment in favor of ABPA because HDS's

contributory negligence would completely bar HDS's claim of negligent

misrepresentation.

Rejection of § 552A, and acceptance of the comparative negligence

scheme set forth in HRS § 663-31, is the best that HDS can hope to achieve (in

terms of a legal framework applicable to the instant suit).  Pursuant to HRS § 663-

31, HDS could still recover -- although at a reduced amount -- provided its

negligence was not greater than that of ABPA.

Even if the law were clear that comparative negligence principles

apply to the instant case, however, the court would grant summary judgment in

ABPA's favor because HDS was more negligent than ABPA.  Any loss caused by

---

[7] The court is not convinced that the law was so clear, given that the District Court in the *Pace* litigation concluded that the oral modifications to the CBAs were valid.  Reasonable minds -- that is, the District Court judge in the *Pace* litigation, on the one hand, and the three-judge panel of the Ninth Circuit, on the other -- disagreed on this point.  HDS itself, during the *Pace* litigation, "moved for summary judgment, contending that HDS and the Union had an oral agreement limiting the bargaining unit--and thus the coverage of the CBAs--to only a couple of employees[.]" *Pace*, 227 F.3d at 1155.  Nevertheless, to the extent HDS argues that ABPA was solely negligent for HDS's losses, the court handily rejects that argument.

the failure to recognize a discrepancy between the written and oral contracts was the fault of HDS, not ABPA.

As a starting point, it is undisputed that the records upon which ABPA based its opinions were HDS's own records.  Unlike cases like *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969) (holding that a title company had a duty to use reasonable care in conducting a title search), in which the relevant information was not readily available to the recipient of that information, HDS's payroll records were produced by HDS and were always within HDS's control. All the information relevant to determining which employees were entitled to trust fund payments was always within HDS's control.  The record demonstrates that HDS is a large, sophisticated commercial entity.  It is not some mom-and-pop store that could not afford its own accountant or lawyer and therefore blindly relied on ABPA.  Had HDS simply read *its own* CBAs, it would have discovered the discrepancy between the written and oral agreements.  Upon discovering such an obvious discrepancy, HDS could have provided those records to its own attorneys, or its own accountants, to determine whether it was making the required pension contributions.  The fault for failure to discover the discrepancy between the written and oral agreements lies squarely with HDS.

HDS's arguments opposing summary judgment are simply nonsensical.  HDS argues that it did not know that its CBAs listed more than two or three drivers as "covered employees."[8]  HDS also argues that, even if it had known that there was a discrepancy between its written CBAs and its oral agreement with the union, it would not have done anything differently because it did not know that it could not orally modify its trust fund obligations.  In short, HDS argues that it did not know the contents of its written CBAs, but that ABPA should have known what was in those CBAs.  Furthermore, HDS argues that it did not know the law, ABPA should have known the law, and ABPA negligently misrepresented that HDS was complying with the law.  These arguments are without merit.  HDS could have opened up its filing cabinets and examined its CBAs at any time.  HDS could have -- and should have -- reexamined the contents of its CBAs upon renewing those CBAs in 1982, 1987, 1990, and 1993.  Upon discovering that it had more "covered employees" than it originally thought, HDS could have asked an attorney or an accountant whether the oral modifications were valid.  HDS was negligent in failing to examine its own records, realize that its oral agreement with the Union did not match its written agreements with the

---

[8] HDS admitted that it never reviewed its own CBAs to determine if it was making the right contributions to the trust funds.  *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 31; Defendant's Concise Ex. C (Request for Admission #8).

18

Union, and seek an opinion from a lawyer or accountant.  No reasonable finder of fact could conclude that ABPA's negligence, if any, equaled or exceeded that of HDS.

Even if there is a genuine issue of material fact as to whether HDS's negligence was greater than that of ABPA, the court would grant summary judgment in favor of ABPA.  As discussed in the following subsection, even if HDS relied on ABPA's representations, that reliance was unreasonable; consequently, HDS cannot succeed on its negligent misrepresentation claim.

   b.    Justifiable reliance

As discussed *supra*, § 552 of the Restatement and Hawaii caselaw provide that a plaintiff must prove justifiable reliance on the defendant's misrepresentations.  *See Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 321, 47 P.3d 1222, 1234 (2002) ("Plaintiffs may recover the pecuniary losses caused by their justifiable reliance on a negligent misrepresentation.").  In the instant case, HDS must demonstrate that it justifiably relied on ABPA's representations that it (HDS) made the required payments to the pension plans.  Thus, to satisfy its burden at the summary judgment stage, ABPA must demonstrate that no reasonable finder of fact could conclude that HDS's reliance was justifiable. ABPA has met its burden.

The question of whether a plaintiff's reliance was justifiable is ordinarily a question for the jury, but may be decided at the summary judgment stage where the facts support only one conclusion. *See Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.*, 217 F. Supp. 2d 858, 865 (N.D. Ill. 2001) ("The issue of justifiable reliance is a question of fact, but it can be decided on summary judgment when no reasonable jury could find that it was reasonable for a plaintiff to rely upon the defendants' statements."); *Keenan v. Allan*, 889 F. Supp. 1320, 1386 (E.D. Wash. 1995) (stating that justifiable reliance "can be decided on summary judgment if reasonable minds would reach only one conclusion"); *Guido v. Koopman*, 1 Cal. App. 4th 837, 843, 2 Cal. Rptr. 2d 437, 440 (1991) ("Justifiable reliance is an essential element of a claim for fraudulent misrepresentation, and the reasonableness of the reliance is ordinarily a question of fact. However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." (Citations omitted.)).

Although the "justifiable reliance" requirement appears to incorporate an ordinary reasonableness standard, *Fejedelem v. Kasco*, ___ N.W.2d ___, 269 Mich. App. 499, *2 (Mich. App. 2006), it also requires the finder of fact to examine the circumstances involved in the particular case, rather than judging the

parties' actions against a purely objective standard.  *See*, *e.g.*, *Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995) ("We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances.  In making this determination, the fact finder certainly could take into account the . . . context in which [the allegedly false statements] were made." (Citations omitted.)).  Relevant circumstantial considerations may include "the parties' (1) relative knowledge of the facts available, (2) opportunity to investigate the facts, and (3) prior business experience."  *Vigortone Ag Prods., Inc.*, 217 F. Supp. 2d at 865.

As discussed *supra*, whether contributory negligence principles or comparative negligence principles should apply in the instant case is unclear.  The court assumes for the moment that comparative negligence -- a standard more favorable to HDS -- applies to the instant case.  This raises a question as to the meaning of the justifiable reliance prong of HDS's negligent misrepresentation claim, however, because the interaction between comparative negligence principles and justifiable reliance is not entirely clear.  *See* Sonja Larsen, Annotation, Applicability of Comparative Negligence Doctrine to Actions Based on Negligent Misrepresentation, 22 A.L.R. 5th 464, 473 (1994) ("[T]he role of justifiable reliance in establishing an actionable case of negligent

21

misrepresentation may be unclear where the courts apply comparative negligence principles.").[9]

In the context of a claim for *fraudulent* misrepresentation, where contributory negligence does not prevent a plaintiff from recovering, the Restatement provides that reliance may be justifiable even where negligent -- that is, the recipient of a fraudulent misrepresentation may be justified in relying on that misrepresentation, even though the recipient is negligent in so relying.[10]

_____

[9] For example, the Florida Supreme Court Committee on Standard Jury Instructions remarked:

> The committee recognizes that a logical tension could exist within a verdict determining that the claimant's reliance was justifiable, but that the claimant was also comparatively negligent (e.g., in relying on the statement by failing to conduct an adequate investigation). The committee also recognizes that justifiable reliance may involve a subjective standard distinct from the objective standard used in defining reasonable care. *Cf.* Restatement (Second) of Torts § 545A cmt. b (1977) ("Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.")[.] Pending further development of the law, the committee reserves the question of the relationship, if any, between justifiable reliance and comparative negligence.

Reported in *Standard Jury Instructions--Civil Cases (No. 02-1)*, 828 So.2d 377, 380 (Fla. 2002) (Appendix).

[10] ABPA also argues that the court should apply the Restatement (Second) of Torts § 542 (1977), which provides that "[t]he recipient of a fraudulent misrepresentation solely of the maker's opinion is not justified in relying upon it in a transaction with the maker" unless certain conditions are met. The instant dispute involves a claim for *negligent* misrepresentation, rather than *fraudulent* misrepresentation, such that the applicability of this test is not clear. Given the ICA's expansive holding in *Kohala Agriculture*, and the Hawaii courts' clear intention to protect

(continued...)

22

Restatement (Second) of Torts § 545A cmt. b (1977) ("There will be cases in which a plaintiff may be justified in relying upon the representation, even though his conduct in doing so does not conform to the community standard of knowledge, intelligence, judgment or care.").  The comments to § 545A, however, seem to indicate that this type of situation would be rare in cases involving sophisticated commercial entities:  "Cases frequently arise in which negligent reliance is justified, when the defendant knows of the plaintiff's incapacity to conform to the standard of conduct of a reasonable man, or of his credulity, gullibility or other tendency to depart from it, and deliberately practices upon the deficiencies of the plaintiff in order to deceive him."  *Id.*  Thus, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases."  *Id.*

In the context of a claim for *negligent* misrepresentation, however, some courts have concluded that the comparative negligence standard and the justifiable reliance standard are identical.  *See*, *e.g.*, *Lawyers Title Ins. Corp. v. Baik*, 55 P.3d 619, 626-27 (Wash. 2002) ("In light of our holding that comparative

---

[10](...continued)
consumers from misrepresentations, the court is not convinced that Hawaii would limit recovery in negligent misrepresentation cases to instances in which one of the narrow conditions of § 542 has been met.

negligence applies to negligent misrepresentation claims, we believe that application of a contributory negligence bar to the 'justifiable reliance' element would be confusing and contradictory. . . .  We see no clear-cut way to distinguish between a plaintiff's reasonableness in relying on a misrepresentation and a plaintiff's culpability in causing his or her own damages.").  Other courts have concluded that justifiable reliance is a "yes/no" question -- that is, either the reliance is justifiable, or the reliance is not justifiable, and the finder of fact need not determine the percentage or degree to which the reliance was justified.  For example, in *Marchese v. Nelson*, 809 F.Supp. 880 (D. Utah 1993), the court examined the plaintiffs' claim for negligent misrepresentation in the context of a comparative negligence law nearly identical in substance to HRS § 663-31.[11]  The district court ruled that the plaintiffs were not justified in relying on the misrepresentations of the defendant (a stock broker) that the plaintiffs' stock was doing well.  The plaintiffs had received stock statements that clearly indicated that the stocks were losing money; the plaintiffs "were put on notice of a potential problem, and therefore, were not justified in relying on [the defendant's] statements that their accounts were progressing and making money."  *Id.* at 892.

---

[11] The district court explained that, under Utah law, "a plaintiff may recover 'from any defendant or group of defendants whose fault exceeds his own.'" *Marchese*, 809 F.Supp. at 896 (quoting Utah Code Ann. § 78-27-38 (1992)).

The district court appears to have concluded that the plaintiffs were simply not justified in relying on the defendant's statements, and as such could not succeed on a claim for negligent misrepresentation under § 552.  *See id.*

If the "justifiable reliance" test is just another way of setting forth the comparative negligence test, *see Lawyers Title Ins. Corp.*, *supra*, HDS could only recover from ABPA if HDS's negligence was less than or equal to ABPA's negligence.[12]  Thus, at the summary judgment stage, the court would have to decide whether a reasonable finder of fact could find that HDS was less negligent than (or as negligent as) ABPA.  For the reasons discussed *supra*, if the court were to equate the justifiable reliance test and the comparative negligence test, the court would grant summary judgment in favor of ABPA because no reasonable finder of fact could conclude that ABPA's negligence equaled or exceeded that of HDS.

The court predicts that a Hawaii court would reject this formulation of § 552, because it renders the "justifiable reliance" component of the § 552 test surplusage.[13]  Instead, the court concludes that "justifiable reliance" is an element

---

[12] Again, HRS § 663-31 provides that a negligent plaintiff may recover from a defendant, so long as the plaintiff's negligence "was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought."  In other words, HDS cannot recover from ABPA if HDS's negligence was greater than that of ABPA.

[13] Although the court believes that the Hawaii courts would give some independent

(continued...)

of the tort of negligent misrepresentation that is separate from the issue of comparative negligence.[14]   The Hawaii courts have specifically stated that justifiable reliance *is* an element of the tort of negligent misrepresentation; merging justifiable reliance and comparative negligence would eliminate the requirement of justifiable reliance altogether.   Under this scenario, the finder of fact would only have to determine whether the recipient of a negligent misrepresentation was more negligent than the maker of that misrepresentation, ignoring the justifiable reliance requirement completely.

---

[13](...continued)
meaning to the "justifiable reliance" requirement, the court is not convinced that there is any meaningful distinction between the two formulations described *supra*.  The court has difficulty conceiving of a plausible scenario in which (1) the plaintiff is less negligent than the defendant, but (2) the plaintiff is not justified in relying on defendant's misrepresentations.  One possible resolution may be found by examining the respective burdens of proof:  the plaintiff has the burden of proving justifiable reliance, whereas the defendant has the burden of proving the affirmative defense of comparative negligence. Thus, in a case where the finder of fact determines that each party was 50% at fault, the plaintiff would not be barred by the comparative negligence statute but would nevertheless lose for failing to carry its burden on the issue of justifiable reliance.  Notwithstanding this potential result, the court believes that the vast majority of negligent misrepresentation cases will be like the instant case, where there is such overlap between the issues of negligence and justifiable reliance that there is no perceptible difference in the comparative negligence and justifiable reliance tests.

[14] In *Kohala Agriculture*, 86 Haw. at 318, 949 P.2d at 158, the ICA examined a Wisconsin Supreme Court case in which the court rejected § 552.  The Wisconsin Supreme Court concluded that, according to Wisconsin law, justifiable reliance was not an element of the tort of negligent misrepresentation.  The ICA, however, followed the Restatement (rather than the Wisconsin Supreme Court), *id.* at 322, 949 P.2d at 162, leading this court to believe that the Hawaii courts intend justifiable reliance to be a meaningful element of a negligent misrepresentation claim.

If the "justifiable reliance" test is separate from the comparative negligence test, and the finder of fact must determine whether HDS's reliance was or was not justified, then the question at the summary judgment stage is whether a reasonable finder of fact could find that HDS's reliance was justified.  The court easily concludes that no reasonable finder of fact could find for HDS.

As discussed *supra*, HDS claims that ABPA was negligent in failing to discover a discrepancy between HDS's oral and written contracts.  Again, this contention is without merit.  The records upon which ABPA based its opinions were HDS's own records.  HDS always had control over these records.  For HDS to rely on ABPA's representations, when HDS could have discovered the truth by looking in its own file cabinets, was not reasonable.  *See Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000) ("If the plaintiff has access to information that was equally available to both parties and would have led to discovery of the true facts, the plaintiff has no right to rely upon the misrepresentation.").

That any reliance is unjustified is further supported by the lack of relationship between the parties.  This is not a case where a client relies on the representation of his own accountant.  Instead, ABPA was hired by and was

serving the Trustees of the Union Trust Funds, not HDS.  Under these circumstances, any reliance on ABPA's audits was unreasonable.[15]

HDS also seems to suggest that because one of its employees did not have actual knowledge of the content of the CBAs, its reliance on ABPA's interpretation of the CBAs was justifiable.  This argument is absurd.  HDS cannot withhold information from some employees and then pass the blame for their lack of knowledge on to an outside entity.  The issue is not whether one individual HDS employee was justified in relying on ABPA; the issue is whether *HDS*, as a commercial entity, was justified in relying on ABPA's audits.  HDS claims that it did not know what was in the written CBAs and that it did not know that these written CBAs required HDS to make additional pension payments.  Even if this is true, for HDS to ignore its own records, and to rely instead on another organization's accountant, is simply unreasonable.

HDS makes one final argument in support of its claim of justifiable reliance:  because ABPA notified HDS on those few occasions when HDS owed money to the pension plans, HDS acted reasonably in believing that it did not owe

---

[15] HDS's failure to examine its own records not only shows that HDS's reliance on ABPA was not justified, but also shows that HDS was more than 50% negligent.  Thus, even if the court is incorrect in its analysis of the justifiable reliance test (such that the comparative negligence standard and the justifiable reliance standard are identical), the court would nevertheless grant summary judgment in favor of ABPA because no reasonable finder of fact would find that ABPA's negligence exceeded HDS's negligence.

money on those remaining occasions when ABPA said that HDS owed no money.

This argument again misses the mark.  The issue is whether HDS acted reasonably

in relying on ABPA -- an outside accountant -- to discover a discrepancy between

its written and oral agreements, when HDS could have found the discrepancy by

examining its own records.  Whether ABPA told HDS that it owed money, or

whether ABPA told HDS that it did not owe money, makes no difference.  HDS's

attempt to pass the blame on to ABPA because HDS failed to read its own CBAs

is simply untenable.  HDS's reliance, if any, was not justified.  Consequently,

HDS cannot succeed on a claim for negligent misrepresentation under Hawaii law.

V. <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS the Defendant's

Motion for Summary Judgment.  As this order disposes of all outstanding matters

in this case, the clerk of the court is instructed to enter judgment in favor of the

Defendant and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 20, 2006.



_____

J. Michael Seabright
United States District Judge

*Honolulu Disposal Service, Inc. v. American Benefit Plan Administrators, Inc.,* Civ. No. 05-00012 JMS/KSC, Order Granting Defendant's Motion for Summary Judgment